**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | |
|---|---|
| **TERESA HUNTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 7:13-CV-2142-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Teresa Hunter ("Hunter") brings this action under 42 U.S.C. § 405(g),

Section 205(g) of the Social Security Act. She seeks review of a final adverse decision

of the Commissioner of the Social Security Administration ("Commissioner"), who

denied her application for a period of disability, disability insurance benefits ("DIB"),

and Supplemental Security Income ("SSI").[1] Hunter timely pursued and exhausted her

administrative remedies available before the Commissioner. The case is thus ripe for

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

review under 42 U.S.C. § 405(g).[2] The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be **REVERSED** and **REMANDED**.

## II.    FACTUAL AND PROCEDURAL HISTORY

Hunter was forty-eight years old on her alleged onset date. (Tr. 173). She graduated from high school and attended college for two years (Tr. 71-72, 195). She previously worked as a home health aide. (Tr. 24, 59). After undergoing back surgery in July 2010, Hunter used donated leave and Family and Medical Leave Act from August 2010 to May 2011, and then leave without pay from May to September 2011, and resigned on September 21, 2011. (Tr. 225). Hunter alleged disability due to spinal fusion surgery and kidney stones. (Tr. 195). She alleged that she became disabled on July 13, 2010. (Tr. 175).

Hunter protectively filed applications for a period of disability, DIB, and SSI on September 17, 2010. (Tr. 9, 76-77). The Social Security Administration denied these applications on November 24, 2010. (Tr. 76-77). She timely requested and appeared at two hearings before an administrative law judge ("ALJ"), on March 12, 2012, and September 4, 2012. (Tr. 19, 48). The ALJ issued a decision, dated

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

September 28, 2012, denying her application. (Tr. 6). The Appeals Council ("AC")

denied Hunter's request for review on October 9, 2013. (Tr. 1-4).

Hunter filed a complaint with this court on November 25, 2013, seeking review

of the Commissioner's determination. (Doc. 1). The Commissioner answered on

March 21, 2014. (Doc. 9). Hunter filed a supporting brief (Doc. 12) on April 30, 2014,

and the Commissioner responded with her own (Doc. 13) on June 4, 2014. Hunter

then filed a reply brief on June 12, 2014. (Doc. 14).

## III.   STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.

The function of this court is to determine whether the decision of the Commissioner

is supported by substantial evidence and whether proper legal standards were applied.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine

if the decision reached is reasonable and supported by substantial evidence."

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence

is "such relevant evidence as a reasonable person would accept as adequate to support

a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial

evidence. However, it reviews the ALJ's legal conclusions *de novo* because no

presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   <u>STATUTORY AND REGULATORY FRAMEWORK</u>

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in

sequence:

> (1)    whether the claimant is currently employed;
> (2)    whether the claimant has a severe impairment;
> (3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4)    whether the claimant can perform his or her past work; and
> (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable

C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561,

562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.

1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy

in significant numbers. *Id*.

## V.    ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

> 1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.      The claimant has not engaged in substantial gainful activity since July 13, 2010, the alleged onset date.

3.      The claimant has the following severe impairment: degenerative disk disease of the lumbar spine status post fusion at L4-L5 in July of 2010.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      I find that the claimant has the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently; stand six hours in an eight-hour day; is limited in her lower extremities; x-rays reveal good position and alignment at L4-L5; she is fitted with a back brace; she has a mildly reduced range of motion of her neck, with a normal range of motion of her other extremities; she has normal reflexes, and normal motor and sensory examinations bilaterally; and she has no manipulative, communicative, or environmental limitations.

6.      The claimant is unable to perform any past relevant work.(20 CFR 404.1565 and 416.965).

7.      The claimant was born on March 22, 1962 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from January 13, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-21).

## VI.   <u>ANALYSIS</u>

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[3] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Hunter objects to the ALJ's findings on her RFC for two reasons. First, she argues that the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Judy Travis. (Doc. 12 at 19). Second, she contends that the ALJ's decision to discredit her self-reported limitations was not supported by substantial

---

[3] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

evidence and incorrectly applied the Eleventh Circuit's pain standard. (*Id.* at 22).In its review, this court finds that the ALJ's decision was not supported by substantial evidence. Accordingly, the court remands the case for further development and consideration.

A.   There Was No Error In The ALJ's Decision to Give Little Weight To Dr. Travis's Opinion

Hunter argues that the ALJ erred by giving little weight to the opinion of Dr. Travis, her treating physician. In March of 2012, Dr. Travis filled out a Physical Capacities Evaluation ("PCE"), where she opined that Hunter could sit for only two hours at a time and for a total of four hours per day,[4] and could stand and/or walk for only fifteen minutes at a time and for a total of one hour per day. (Tr. 346). On the same date, Dr. Travis also indicated on a Clinical Assessment of Pain ("CAP") form that Hunter's "pain is present to such an extent as to be distracting to adequate performance of daily activities and/or work," that physical activity would lead to "greatly increased pain and to such a degree as to cause distraction from task or total abandonment of task," and that medication to treat Hunter's condition would "place severe limitations on even the most simple everyday tasks." (Tr. 348). She also indicated that "little improvement is likely . . . and pain is likely to worsen with time,"

---

[4] The ALJ incorrectly summarized Dr. Travis's opinions, writing, "Dr. Travis opined that the claimant could sit two hours at a time <u>for a total of eight hours a day</u>." (Tr. 13).

and that other sorts of treatment for pain, such as injections, "have had no appreciable effect or have only briefly altered the level of pain. (*Id.*).

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhard*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when:

- the treating physician's opinion is not bolstered by the evidence;

- the evidence supports a contrary finding; or

- the treating physician's opinion is conclusory or inconsistent with his or her own medical records.

*Id.* at 1241 (citation omitted). When the ALJ adequately states specific reasons for disregarding a treating physician's opinion, and those reasons are supported by substantial evidence, there is no error. *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11th Cir. 2005) (per curiam).

The ALJ gave little weight to Dr. Travis's opinion for two reasons. First, he focused on Dr. Travis's remark on the PCE that Hunter was reinjured in a motor vehicle accident in 2011. (Tr.13, 347). The ALJ wrote, "Where is the objective evidence of any motor vehicle accident? Where is the evidence as regards her injuries from said accident?" (Tr. 13). As a threshold matter, the court finds such a series of rhetorical questions to be a distinctly unclear way to critique Dr. Travis's opinion.

9

More importantly, the <u>absence of evidence</u> about a 2011 motor vehicle accident is not sufficient to discrediting Dr. Travis's opinion.[5] The mere absence of evidence does not <u>necessarily</u> entail that the accident never occurred. Furthermore, according to Dr. Travis's account, the car accident played only a contributory role in causing Hunter's symptoms: it "reinjured" her. (Tr. 347). There would have been stronger grounds for suspicion on account of a lack of evidence if Hunter's symptoms were alleged to have been first caused by a car accident, but the record shows that she had been experiencing back pain since the 1990s. Therefore, the ALJ's first reason for assigning little weight to Dr. Travis's opinion is not well-founded.

The second reason articulated by the ALJ is that Dr. Travis's opinion "is inconsistent with Dr. Travis's examinations of the claimant, which do not show any abnormalities." (Tr. 13). This reason is supported by the evidence of Dr. Travis's examinations. Her only extensive examination notes on record come from a DDS examination in November of 2010, approximately sixteen months before she filled out the CAP and PCE. (Tr. 320, 346, 348). The physical examination findings were all normal, save only for a "mildly reduced range of motion" in Hunter's neck. (Tr. 320-21). She diagnosed Hunter with "back pain with history of lumbar disk disease," and

---

[5] Had the ALJ developed his reasons for being suspicious about the absence of evidence about the alleged motor vehicle accident beyond two rhetorical questions, the court might have better understood his perspective.

"renal calculi with intermittent flank pain." (Tr. 321). Dr. Travis's Opinion from this examination simply states, "Ms. Hunter is still recovering from surgery to her lumbar spine. She is not getting physical therapy. She complains of intermittent episodes of flank pain consistent with renal calculi." (*Id.*). Dr. Travis's later treatment records, from August of 2011 to March of 2012, are only bare-bones charts, with descriptions of her condition no longer than"neck and lower back discomfort." (Tr. 350-352). There are no findings from Dr. Travis on record that lend much support to her opinions in the CAP and PCE about Hunter's extensive limitations, and so the ALJ's decision to assign little weight to her opinions is supported by substantial evidence.

B.      The ALJ Erred By Making An RFC Assessment Without A Supporting Medical Source Statement

However, although the ALJ's decision to give little weight to the assessments of Dr. Travis was proper, his ultimate findings on Hunter's RFC are not supported by substantial evidence. Dr. Travis was the only physician to provide a medical source statement[6] in the record; none of her consultative physicians or other treating

─────────────────────

[6] "Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports. Medical source statements are to be based on the medical sources' records and examination of the individual; i.e., their personal knowledge of the individual." SSR 96-5P.

physicians submitted one. In making his RFC findings, the ALJ cites for support[7] only the assessment of Dr. Peter Schosheim, a medical expert who never examined Hunter. (Tr. 13, 56).

The court finds *McCright v. Colvin*, 2014 WL 1513290 (N.D. Ala Aug. 6, 2014) persuasive on this issue. In *McCright*, the court reversed an ALJ who had assigned little weight to the only physician who had both evaluated the claimant and prepared a medical source statement. *Id.* at *3. To reach his RFC finding, the ALJ relied only upon the opinion of a reviewing physician, who had never examined the claimant. *Id*. The court held that opinion not to be substantial evidence for an RFC determination, particularly because it was contrary to the opinion of the treating physician. *Id.* (citing *Shafarz v. Bowen*, 825 F.2d 278 (11th Cir.1987) ("The opinions of nonexamining, reviewing physicians ... when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence.")). Here, too, the ALJ was not justified in relying only on a nonexamining physician's opinion to arrive at an RFC finding.[8]

---

[7] "I find that this Doctors [*sic*] RFC assessment is well supported." (Tr. 13).

[8] Furthermore, the court notes that Dr. Schosheim's RFC assessment stated that Hunter could lift ten pounds occasionally and less than ten pounds frequently, and that she could not stand and/or walk for more than two hours in an eight-hour day, limiting her to a sedentary position. (Tr. 57, 64). The ALJ's RFC determination differed considerably, finding that Hunter could stand for six hours in an eight-hour day and could lift twenty pounds occasionally and ten pounds frequently. (Tr. 11). Therefore, contrary to the ALJ's claim, his RFC findings do not seem to be supported by Dr. Schosheim's.

Furthermore, the court in *McCright* concluded that the case was not one of the rare instances where the RFC is so apparent that the ALJ is justified in making a determination without support from a medical source statement. 2014 WL 1513290 at *6. Another case from this district has explained this rule, "An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person." *Rogers v. Barnhart*, No. 3:06–CV–0153–JFG, (Doc. 13 at 5) (N.D.Ala. Oct. 16, 2006); *see also Manso–Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996) ("[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.").

In *McCright*, the court distinguished the case from an unpublished[9] Eleventh Circuit opinion that upheld an ALJ's RFC findings even without the support of a medical source statement. *Castle v. Colvin*, 557 F. App'x 849 (11th Cir. 2014). In *Castle*, the Eleventh Circuit cited four facts as substantial evidence for the ALJ's findings: the claimant had never visited a doctor in the period between his alleged onset date and date last insured, denied having the musculoskeletal problems that

---

[9] As an unpublished opinion, *Castle* is not binding on this court; instead, it is persuasive authority. *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

normally would accompany his alleged disability, reported engaging in activities that fell into the category of light work, and had been given a release without work restrictions by a doctor. *Id*. at 850-51, 853. None of those facts applied to the claimant in *McCright*, and the complexity of the claimant's back problems meant that the ALJ was not qualified to decide his RFC without a medical source statement. 2014 WL 1513290 at *6-7.

Likewise, this case lacks facts like those that enabled the ALJ in *Castle* to make an RFC assessment on the basis of common sense, without a medical source statement. The record contains evidence that Hunter had received medical treatment for her back pain dating back to 2005, five years before her alleged onset date. (Tr. 278). Her reports of her daily activities state extensive limitations; they do not clearly indicate that she is able to do a light range of work. (Tr. 33-38, 41-43, 201-08). Nor is there any other evidence, such as a doctor's work release or a denial of symptoms that would normally accompany the alleged disability as in *Castle*, giving support for the ALJ's inference that she is capable of light work. Finally, having undergone surgery and years of medical treatment, Hunter's condition is not a simple one that an ALJ can evaluate without the benefit of a medical source statement.

In this case, the ALJ's disability determination is not supported by substantial evidence because there is not a medical opinion by an examining physician in support

of the ALJ's RFC determination, nor other facts permitting a determination on the basis of his common sense. Without a proper basis in the record for the ALJ's opinion, the ALJ substituted his own opinion in making the RFC determination. Accordingly, under the circumstances of this case, the ALJ committed reversible error.[10]

## VII.  CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is not supported by substantial evidence and that she did not apply proper legal standards in arriving at it. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this the 24th day of February, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[10] Because the ALJ's decision is due for remand on this ground, the court does not reach Hunter's argument that the ALJ improperly discredited her testimony on her limitations and improperly applied the Eleventh Circuit's pain standard. *See* Pl.'s Brief (Doc. 12 at 22).